Mr. Tobin, I have a question for you before we begin. How does the district judge determine probability? It depends on how the question is raised to her, Your Honor. Well, it's raised like it was in this case. How does the district judge in applying the Georgia statute, he's got affidavits, is that right? There were two challenges made here. One was on the basis of the pleadings for certain portions. I understand. I'm talking about where you're going to make a probability determination. Then, were you going to make a probability determination based on evidence? It would be applying the garden variety genuine issue of material fact under Rule 56. No, no, no. But you've got to make a determination that the plaintiff would prevail on before a jury. Probability. Probability. Probability of success on the merits of the number. And making that determination, does the judge's weighing the evidence that was presented by affidavit or not? Not at all. Not at all, Your Honor. Does it make any credibility choices? Not at all, Your Honor. Well, then how did the, are you saying that it's like a summary judgment test? It's investing the summary judgment test. Are you arguing that the word probability means this? The question before the district judge is whether there's enough evidence to go to a jury. Yes, Your Honor. Oh, that's your interpretation of the word probability. That's my interpretation. That's the interpretation of the Ninth Circuit in Maycoff, the Fifth Circuit in Henry v. Lake Charles, the First Circuit in Godin v. Shanks. The First Circuit was different. The First Circuit test asks the court to determine whether there's enough evidence to go to a jury. It, well, Your Honor, the, the Ninth Circuit. You want me to read you the statute? I'm sorry. The First Circuit, or. . . In Godin v. Shanks, Your Honor, we're both referring to the same case. The court shall grant a special motion unless the party against whom the special motion is made, in this case it's Carbone, shows that the moving party's exercise of its right of petition, that's CNN, was devoid of any reasonable factual support that, or any arguable basis in law that the moving party, that CNN's, acts caused actual injury to the sparring party. So the question is whether that's a summary judgment kind of standard. Yes, Your Honor. Do you say that's what probability means? In the context of the Georgia statute, which is identical to the California statute. Do you certify the question of probability of the Georgia Supreme Court? Sorry, sir? Do you want us to certify the question of probability of the Georgia Supreme Court? I think that would be appropriate if the court has a question. That's the only way we can avoid the Seventh Amendment problem, isn't it? It would be if the court felt that there was a Seventh Amendment problem. The probability means that the trial judge determines what the outcome is going to be by considering affidavits, resolving credibility choices. Not. . . Just a minute. Yes, sir. Then there's a Seventh Amendment problem because they demanded a trial by jury. Is that not right? If there is a credibility determination, yes, Your Honor. All right. So the only way to avoid the Seventh Amendment problem was for the Georgia Supreme Court to say probability doesn't mean probability. It means sufficient evidence to go to a jury. I would say, alternatively, this court could follow Makoff. This court could follow Planned Parenthood in the Ninth Circuit. This court could follow the cases in. . . Then we have to decide the Seventh Amendment question. Those courts found no Seventh Amendment problem. This is another circuit. I respect that. Yes, sir. If we thought probability meant finding facts, passing on credibility, if that's what it means, then there's clearly a Seventh Amendment problem because they have demanded a trial by jury. Your Honor, if you disagree. . . And the only way we could avoid it is by construing probability to mean what you say it means. If you disagree with the Ninth Circuit, if you disagree with the Fifth Circuit in the way they've interpreted it. . . Forget that. If you disagree with the Eleventh. . . Take the question that I put to you. Yes, sir. If you disagree with the Eleventh Circuit in Tobinick v. Novella. . . If we agree. . . If we think that probability means findings of fact, resolving credibility choices, if that's what it means, then there's a Seventh Amendment problem, and it can only be avoided by a different interpretation of the word probability. Will you agree with that? Yes, Your Honor. Okay. I apologize now for interrupting. Not at all. You're on my nickel. And I'm here to answer any question the Court has, and I appreciate the colloquy, Your Honor, very much. But I would also, to further answer the question, I would point the Court to Tobinick v. Novella, which is where Judge Rosenberg in the Southern District of Florida and then the Eleventh Circuit panel just last year affirmed the grant of an anti-SLAPP motion under California law. They imported California law and a choice of law. It came up to this circuit, and this circuit, the panel held that that was a reasonable interpretation of California law. And what Judge Rosenberg did in Tobinick and what this circuit approved in Tobinick was applied a genuine issue of material fact standard to the rival affidavits, not a credibility standard. And so under California statute, in applying it in this court, this court has already interpreted it to avoid the Seventh Amendment problem in an appropriate fashion by looking to California law. That is the appropriate guide star for this case as well because the Georgia General Assembly amended the anti-SLAPP statute, specifically following the instruction or the guidance, if you will, of this court in Royalty Network v. Harris in 2014 when Judge Black held or the panel held an opinion by Judge Black that the prior statute conflicted with the federal rules because it required verification. That case didn't decide the Seventh Amendment problem. It did not, Your Honor, but it did say look to California because California statute does not have a verification requirement. So the legislature looks at California. We're now in 2016. California statute and Georgia statute are substantially identical for material purposes for this court. Tobinick v. Novella, a panel of this court, applied the California statute last year, found no constitutional issues, and applied the summary judgment standard to the evidentiary question. And then on the facial question, there was a question of whether the publication was opinion. In Tobinick v. Novella, the trial judge was asked to rule whether the phrase all doctors in Florida are quacks, whether that was actionable as to the plaintiff. In Tobinick, didn't the plaintiffs waive their challenge to the application of the California statute based on the Erie Doctrine? The court held that there was enough of a colloquy before the district court about the issue that the district court did her job and independently made a determination. I thought that we said in that opinion that they waived it. You did, but then you went on to say, the 11th Circuit went on to say, furthermore, not only did the— We're not bound. That's dicta. That's dicta. Furthermore is a good way of getting the dicta. Well, I don't—I appreciate that, Your Honor. We don't see the furthermore as dicta. We see it as part of the holding. Your whole case is we have to interpret probability to mean enough evidence to get to a jury, not to win. That is correct, Your Honor. It's a genuine issue of material fact. And, Your Honor, the case that I would point to that most clearly sets this out— We have better rules of civil procedure that answer those questions. But they do not answer them in a way that directly conflicts with the anti-SLAPP statute as the 5th Circuit, the 9th Circuit— If I may, that's where I believe the issue to be joined here. I mean, the Supreme Court decided Shady Grove in 2010, and they said quite clearly that if state and federal rules conflict, you have to establish what question the rules were intended to resolve, and then what level of generality and analysis the court has to go through to make a determination. I don't know that either side has specifically stated what question is at issue. I mean, at a very broad level, you could say when and how can a defendant seek the court's pretrial resolution of the plaintiff's claims, and then you would analyze under Rule 12, Rule 56 in the anti-SLAPP statute what the answer to that is. And you might get three different questions. But it seems to me that if the trial court here could properly find that Rule 12, which she did, answers the question of how a party like Carbone gets dismissal, then you have to deny the anti-SLAPP motion, take a look at the 12B6 motion, either grant or deny that, and go to discovery. And we have brought the 12B6 motion. We've asked the court to exercise pendant jurisdiction. Well, now, I would say to that, if we affirm on anti-SLAPP, we're not going to get to that. We're going to grant the motion to dismiss, right? Absolutely right. Well, we would ask the court to give a de novo consideration if that's an argument the court would not want to hear today. I hear you, Your Honor. In a mandatory appeal, we can't consider that. And not only that, we have the amendment problem and all those other kinds of things. To answer Judge Murphy's question, Justice Scalia said that he and the concurrence agreed. The real question is whether the federal and the state rules can be reconciled. And this circuit, in looking at Shady Grove and those conflict situations, have looked in Cone versus Office Depot. But we have to reconcile. We have to interpret probability to mean sufficient evidence. That is correct, Your Honor. And I think we've given you all of the elements, and it's all in the case law. It's in Mankoff. It's in Planned Parenthood. Now, this court can decline to follow the other circuits. Of course it can. I want to make sure I understand this. So your interpretation of the anti-SLAPP statute is that it requires no more than what summary Rule 56 would require? It requires the consideration with the burden on the other side. And it also provides for attorneys' fees. So it provides other remedies. It provides the remedy in a different fashion. And it is the question to call it— The question is whether you can go forward to a jury. It requires something different from what the federal rules require. It does not require something different. It requires application of the federal rules in the context of the motion to strike, which the Georgia legislature has looked at California with the guidance of this court and Royalty Network. And this court has applied in Tobinick v. Novella. So we believe that the Eleventh Circuit is already there. It just hasn't ruled squarely as a matter of the Georgia statute. But we're not asking it to apply the statute in any way other than it's already applied the California statute. And the question, again, Your Honor, as you found in—I mentioned Office Depot a moment ago, Columbia Office Depot. Is there a direct conflict within the Shady Grove rubric? Well, you know, the Georgia legislature could copy the Maine statute. It could, but it chose— That is a Rule 56 test. But it chose to go with California with the guidance of this court. I understand. You had some bad advice in my opinion. But go ahead. You've saved me a little time. I did. I did, Your Honor. Can I ask one last thing before you sit down? Because your opponent may want to speak to this as well. And I think you should have the opportunity. Abbas v. Foreign Policy Group was a D.C. Circuit case that, unlike Makoff, did not go in your direction. I believe the court concluded that an anti-SLAPP statute there required a plaintiff to show a likelihood of success on the merits to survive a motion to strike. Neither Rule 12 nor Rule 56 required that. So denying the anti-SLAPP motion at that time was affirmed. What differs here from that analysis that the D.C. Circuit employed? They employed the language that Judge Kaczynski employed in the Makoff case in his dissent. And that is, does it occupy the entire field? Is it, in Judge Kaczynski's words, is it a matrix of rules that allow for the only remedy in a federal court? As Judge Wardlaw said in her dissent, in her concurrence to the denial of rehearing in the Makoff case, that's a kaleidoscope, not a lens. And what the appropriate reading of Shady Grove is, is there a direct conflict such that you cannot read both rules together? The bias in Shady Grove is to try to read the two rules together. And we have provided the court, as this court did in Tobinick already with the California statute following, we think, the wisdom of the Ninth Circuit. We have provided the court with the appropriate way that the federal courts that accept anti-SLAPP now have been interpreting the rules to avoid the Seventh Amendment question, Judge Joe Flatt. I thought what Judge Kavanaugh did in Abbas was he really applied the Shady Grove analysis, not Judge Kaczynski's analysis. He asked, do the federal rules and the anti-SLAPP statute purport to answer the same question? He said they do. And he then considered whether the rules were – satisfy the Rules Enabling Act. But this court has already said that the question posed by the anti-SLAPP – he said this in Royalty Network and again, I believe, in Tobinick – that the question posed is whether the citizens have a right to be protected from their First Amendment rights being chilled by the threat of onerous judicial proceedings. That's the same question that the court framed in Godin and in Makoff v. Trump, the First Circuit and the Ninth Circuit. And it's a different question than whether the court may dismiss on Rule 12b-6 or shall dismiss on Rule 56.  Thank you, Your Honor. Ms. Evans. Thank you. May it please the court, my name is Stacey Evans and along with Lynn Wood and Jonathan Greenberg, we represent the Appellee, Mr. David Carboni. Now, we're here today on an appeal in a federal court case that would not exist if we weren't dealing with a state anti-SLAPP statute, which is a state procedural statute that's trying to supplant Rules 12 and 56 under the federal rules. Now, the federal rules, of course, provide what then-Judge, now Justice Kavanaugh, described in the Abbott's decision as an integrated program for determining whether to grant pretrial judgment in cases in federal court. But because of this Georgia anti-SLAPP statute, this state procedural statute, Mr. Carboni has been thrown out of this efficient, integrated system. If this court were to decide that the Georgia anti-SLAPP statute does apply in federal court and that Mr. Carboni does not meet that probability standard, then this case has become one that cannot proceed in federal court solely because of this state procedural statute. Because we know, because of Judge Linda Evans' decision to deny defendants' motion to dismiss because it found that Mr. Carboni met the plausibility standard of Rule 12, we know that under just the federal rules… You might want to slow down a little bit because I'm having a hard time keeping up with you. But look, Mr. Carboni hasn't been thrown out of anything. The district court denied the motion, and my question is, which I think we have to look at, is whether or not the denial was correct. And it seems to me, if you're able to show here that 12 and 56 provide a vehicle for CNN to attack the complaint, then Shady Grove would preclude, as Judge Evans found, an anti-SLAPP motion. And that's what I think you ought to talk about. And you're exactly correct, Judge Murphy. We don't need to be analyzing whether the district court was right about its application of Rule 12 because that's beyond our jurisdiction. I agree, Your Honor. And I meant only that if this court were to apply the anti-SLAPP statute and the probability standard, and you were to decide that Mr. Carboni did not meet that standard, then this has become a case that would proceed just fine under the regular federal rules because Judge Evans denied. That's for Judge Evans, and that might or might not get to us someday. Correct. And you are correct that the relevant precedent here is Shady Grove. And Shady Grove requires us to say, to look first, is there a federal rule that answers the question in dispute? And the question in dispute is, can the plaintiff proceed with his case or can the defendant stop the case? See, the problem I have here is that neither side defined the question. I mean, are you wanting us to come up with the Shady Grove question? You just asked two questions. Again, it seems to me when and how can a defendant seek the court's pretrial resolution of a plaintiff's claims is something you could analyze under 1256 and the anti-SLAPP. Are you willing to agree to that formulation of what we ought to be analyzing? Your Honor, 12 and 56 answer the question. And I think now Justice Kavanaugh described the question best in Abbess when he said the question is, when should a case be dismissed prior to trial? That's it. And we first answered that question under Rule 12, whether the plaintiff has met the plausibility standard. And we don't address that again until we get to Rule 56. And is there a material issue, a fact, to go to trial? There's no room. The pleading standard, you answer it under 12. If it's an evidence standard, you answer it under 56. The federal rules answer it in those circumstances. And to the extent that the anti-SLAPP statute requires something different, then they're answering the same question in different ways. That is correct. And Shady Grove says we can't allow that. Shady Grove says we can't allow it. And CNN makes the argument that you should ask them in sequence. Ask the plausibility standard, and if you meet it, then you're going to go to this probability standard. But Shady Grove says you can't do that. Even if you could answer them in sequence, you don't because the issue and dispute, whether the case should be decided before trial, is already answered by 12. And if you want to answer it again, you don't get to it until Rule 56. And if the defendant wanted to file an early motion for summary judgment and submit materials outside of the pleadings, like affidavits and such, then you've got to convert it to a rule. Under Rule 12d, you've got to convert it to a Rule 56 motion and decide it under the summary judgment standard. The federal rules take care of everything. There's no room for any interim standard. Yeah, and then the question is, are those rules within the Rules Enabling Act, do they really regulate procedure? Hard to see how we would answer that different from how now Justice Kavanaugh did. Correct. Justice Kavanaugh's analysis is spot on. And in this case, neither party here, CNN has not, we certainly have not, said that there's a violation of the Rules Enabling Act. So we are good to go as soon as we find that there is a collision between the federal rules and the state procedural statute, which there is. The collision that exists between the current version of the anti-SLAPP law here in Georgia and the probability standard and the federal rules, that collision is very similar to the collision that existed between the prior anti-SLAPP laws verification requirement and Rule 11, saying that there was no verification requirement. And this court decided, of course, in Royalty Network, that because Rule 11 already covered the issue, then there was no room for this prior version of the anti-SLAPP statute. And even though the legislature tried to amend this statute, it's still trying to answer questions that the federal rules already answer. And this court should come down exactly as it did in Royalty Network and find that there is a collision and you follow the federal rules. Now, if the court were to decide that the anti-SLAPP statute should apply in federal court, which, of course, we believe should not be, the statute still could not apply in this case because the court would have to find the statute to have some substantive quality to it to apply it in federal court, and then you can't apply it retroactively. And the new version of the Georgia anti-SLAPP statute— Wait a minute. Sitting in diversity, why wouldn't the court, if we get beyond the conflict issue, why wouldn't the federal court look at the anti-SLAPP statute and make a simple determination about whether or not your client has a substantial opportunity or likelihood to prevail on the merits? And if he or she doesn't, say that the protection given by the Georgia legislature to media outlets like CNN shouldn't be furthered. Your Honor, when we're sitting in diversity in a federal court, the court applies federal procedural law and would only apply state substantive law. And so if we got to the point where the court was going to apply this statute, I don't believe, we do not believe, of course, that it is substantive, and CNN even concedes in their reply brief at pages 15 and 16 that the outcome under the defamation law of Georgia is going to be the same, whether you apply the anti-SLAPP statute or not. It's simply a matter of timing. Timing, of course, is a procedural issue. But my point is if we get to the point that we have decided that this statute should apply in federal court, it would only be because the court has found some substantive part to this. And if you do that, then you can't— Substantive part to what? Well, under HANA, the court would only—federal court should enforce state laws that make an important difference to character or result of the litigation. So you start with is there a conflict between the federal rule and the state statute, and if you decide that there's not, that the state statute could continue— But I thought your argument was that if we assume there is no conflict, then you look at the substance of the ruling that the district judge made here. No, Your Honor. You move to the HANA test, which is if you've decided that there is room for the state statute to work alongside the federal rule, which we do not contend. But if you did that, you still wouldn't apply the state statute unless you found that it was furthering the aims of ERI, which is is this going to avoid forum shopping or are we going to avoid inequitable administration of the laws? And you would have to answer those questions yes, which would make the statute have substantive value. And if you've done that, then it's a substantive statute and you can't apply it retroactively. And this version of the statute that— But very importantly, you don't think we should get into any of this. I do not, Your Honor. It's my backup. And if there are no further questions, I believe the court is right on the mark in understanding that Judge Kavanaugh, Justice Kavanaugh said this best, and the court should affirm the decision and we'll rest on our briefs. Mr. Tobin. Thank you, Your Honors. We are hoping that the court will accept the anti-SLAPP statute. We came here hoping that either under anti-SLAPP, quite frankly, or Rule 12b-6, the court would address some serious errors in the district court's ruling. I don't see how we have jurisdiction to address the Rule 12b-6 question. I understand and I respect that, Your Honor. As to the anti-SLAPP, Your Honor, Judge Murphy, the question presented under the anti-SLAPP statute, we could look to Makoff, we could look to Godin, we could look to Royalty Network. Abbas, as your opponent suggests. Your Honor, Abbas framed it. You have a stark choice. You do. You can follow the framing in Abbas or you can follow the others. We think that the others took a look at all of the portions of Shady Grove and synthesized them correctly. We think that Abbas took a look at one section and ran with it and, as Judge Makoff, in the Makoff case, Judge Warlaw said, created this kaleidoscope that doesn't, isn't supported by the plain language of the rules of the statute. And so we would appreciate it if the court would take a very close look at the question presented, apply the anti-SLAPP statute. We will take a close look. You can bet on that. I know you will, Your Honor. Thank you. Thank you for your time. We'll be in recess until 9 in the morning.